UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| PROVEN NETWORKS, LLC., | |
| Plaintiff, | Case No.  2:20-cv-00074-JRG |
| v. | |
| CISCO SYSTEMS, INC., | **JURY TRIAL DEMANDED** |
| Defendant. | |

**PLAINTIFF PROVEN NETWORKS, LLC'S OPPOSTION TO DEFENDANT CISCO
SYSTEMS, INC.'S MOTION TO TRANSFER VENUE**

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................................ 1

II.  CISCO HAS NOT MET ITS SIGNIFICANT BURDEN TO SHOW THAT THE NORTHERN DISTRICT OF CALIFORNIA IS "CLEARLY MORE CONVENIENT" THAN PROVEN'S CHOICE OF FORUM .................................................................... 2

   A.   The Private Interest Factors Weigh Against Transfer ........................................... 3

      1.   The sources of proof are just as accessible in this District as in the Northern District of California ......................................................................................................... 3

      2.   The Northern District of California is not clearly more convenient for the willing witnesses ............................................................................................................ 5

      3.   The Northern District of California does not possess more relevant subpoena power ... 7

      4.   The "practical problems" and judicial economy weigh against transfer ....................... 9

   B.   The Public Interest Factors Weigh Against Transfer .......................................... 10

      1.   Administrative difficulties resulting from court congestion weighs against transfer ... 10

      2.   The Northern District of California does not have a greater interest ............................ 10

III. CONCLUSION ................................................................................................................. 11

# TABLE OF AUTHORITIES

**Cases**

*AGIS Software Dev. LLC v. HTC Corp.*,
  No. 2:17-CV-00514-JRG, 2018 WL 4680558 (E.D. Tex. Sept. 28, 2018) .................. 2, 3, 5, 10

*Battle ex rel. Battle v. Mem'l Hosp. at Gulfport*,
  228 F.3d 544 (5th Cir. 2000) ............................................................................................... 9

*CXT Sys., Inc. v. Container Store, Inc.*,
  No. 2:18-CV-00173-RWS-RSP, 2019 WL 1506015 (E.D. Tex. Apr. 5, 2019) ......................... 5

*Diem LLC v. BigCommerce, Inc.*,
  No. 6:17-CV-00186-JRG, 2017 WL 6729907 (E.D. Tex. Dec. 28, 2017) ................................ 7

*In re Volkswagen of Am., Inc.*,
  566 F.3d 1349 (Fed. Cir. 2009) ............................................................................................ 9

*In re Volkswagen of America, Inc.*,
  545 F.3d 304 (5th Cir. 2008) ........................................................................................ 2, 3, 6

*Ingeniador, LLC v. Adobe Sys. Inc.*,
  No. 2:12-CV-00805-JRG, 2014 WL 105106 (E.D. Tex. Jan. 10, 2014) ................................ 11

*iPowerUp, Inc. v. Ascent Solar Techs., Inc.*,
  No. LA CV16-01006 JAK (AFMx), 2016 WL 6953453 (C.D. Cal. May 27, 2016) ................ 3

*J2 Glob. Commc'ns, Inc. v. Protus IP Sols., Inc.*,
  No. 6:8-CV-211, 2009 WL 440525 (E.D. Tex. Feb. 20, 2009) ............................................... 3

*Lax v. Toyota Motor Corp.*,
  65 F. Supp. 3d 772 (N.D. Cal. 2014) .................................................................................... 3

*Mirror Worlds Techs., LLC v. Facebook, Inc.*,
  No. 17-CV-3473 (JGK), 2017 WL 5634127 (S.D.N.Y. Nov. 20, 2017) .................................. 4

*Mohammed v. Mazda Motor Corp.*,
  90 F. supp. 2d 757, 774 (E.D. Tex. 2002) ............................................................................. 6

*Net Navigation Systems, LLC v. Cisco Systems, Inc.*,
  Case No. 4:11-CV-660 (Aug. 24, 2012) ................................................................................ 4

*Nexus Display Techs. LLC v. Dell, Inc.*,
  No. 2:14-CV-762, 2015 WL 5043069 (E.D. Tex. Aug. 25, 2015) ........................................... 9

*Oyster Optics, LLC v. Cisco Systems, Inc.*,
    Case No. 2:16-cv-1301-JRG (Dec. 8, 2017) .................................................................. 4

*Peloton Interactive, Inc. v. Flywheel Sports, Inc.*,
    No. 2:18-CV-00390-RWS-RSP, 2019 WL 2303034 (E.D. Tex. May 30, 2019) ................. 5, 11

*PersonalWeb Techs., LLC v. NEC Corp. of Am., Inc.*,
    No. 6:11-CV-655, 2013 WL 9600333 (E.D. Tex. Mar. 21, 2013) ......................................... 7, 9

*Phoenix Licensing, L.L.C. v. Royal Caribbean Cruises Ltd.*,
    No. 2:13-CV-1095-JRG-RSP, 2014 WL 7272640 (E.D. Tex. Dec. 22, 2014)........................ 11

*Plastronics Socket Partners, Ltd. v. Dong Weon Hwang*,
    No. 2:18-CV-00014-JRG-RSP, 2018 WL 6589873 (E.D. Tex. Dec. 14, 2018)......................... 9

*Realtime Data, LLC v. Rackspace US, Inc.*,
    No. 6:16-CV-00961, 2017 WL 772653 (E.D. Tex. Feb. 28, 2017) ........................................... 7

*Regents of the Univ. of Cal. v. Eli Lilly & Co.*,
    119 F.3d 1559 (Fed. Cir. 1997) .................................................................................................. 9

*SSL Services, LLC v. Cisco Systems, Inc.*,
    Case No. 2:15-cv-00433-JRG-RSP (Feb. 24, 2016) .................................................................. 5

*Texas Data Co., LLC v. Target Brands, Inc.*,
    771 F. Supp. 2d 630 (E.D. Tex. 2011) ....................................................................................... 2

*Tivo Inc. v. Cisco Systems, Inc.*,
    Case No. 2:12-cv-311-JRG (Aug. 13, 2012) ............................................................................. 5

*Uniloc 2017 LLC v. Cisco Systems, Inc.*,
    Case No. 2:18-cv-00505-JRG (Sept. 16, 2019) ......................................................................... 4

*VirtualAgility, Inc. v. Salesforce.com, Inc.*,
    No. 2:13-CV-00011-JRG, 2014 WL 459719 (E.D. Tex. Jan. 31, 2014) .................................... 9

**Statutes**
28 U.S.C. §1404 ............................................................................................................................. 2

**MEMORANDUM OF LAW**

**I.     INTRODUCTION**

Defendant Cisco Systems, Inc. ("Cisco") claims that the Northern District of California would be more convenient than this Court for the litigation of this action. But Cisco has failed to carry its significant burden to show good cause for the transfer. All of the relevant transfer factors either weigh against transfer or are neutral at best. For example, Cisco repeatedly admits that its documentary evidence can be accessed "from anywhere," including from its large Richardson facility within this district that employs many people skilled in the technologies of the patents-in-suit. (Mot. at 3 n.1, 9.) Cisco also identifies only two Cisco witnesses who reside in the Northern District of California, while skirting past the fact that a third Cisco witness who would likely have relevant information is located in Massachusetts—much closer to this Court than to California. Furthermore, as party witnesses, the convenience of Cisco's employees is entitled to little weight in a transfer analysis.

Cisco claims that "key" third-party witnesses are all located in the Northern District of California, but nearly all those third-party witnesses are prior art inventors; courts of this District recognize that prior art inventors are rarely, if ever, called as witnesses at trial. But Cisco ignores that all of the inventors of the '757 Patent are listed as residing in Texas, including one listed as residing in Richardson. And, indeed, all four of the asserted patents were originally assigned to Alcatel Lucent entities which has a large Plano facility. Besides prior art inventors, Cisco identifies just one named inventor of one asserted patent as a third-party witness that Cisco "believes" to reside in the Northern District of California. Such scant evidence cannot carry Cisco's burden to show that the Northern District of California is "clearly more convenient" than the forum chosen by Plaintiff Proven Networks, LLC ("Proven").

Furthermore, the public interests weigh against transfer or are neutral at most. Cisco fails

1

to show that the Northern District of California has a much greater interest in this case than this Court. Cisco has an office in this District and sells its products in this District, making this factor neutral at most. Judicial economy and court congestion also favors this District's retaining this action, as cases reach trial nearly six months faster in this District than in the Northern District of California. Cisco admits that the other public interest factors are neutral and therefore do not weigh in favor of transfer.

For these and the following reasons, Cisco's motion to change venue should be denied.

## II. CISCO HAS NOT MET ITS SIGNIFICANT BURDEN TO SHOW THAT THE NORTHERN DISTRICT OF CALIFORNIA IS "CLEARLY MORE CONVENIENT" THAN PROVEN'S CHOICE OF FORUM

To prevail on a motion to transfer under §1404(a), there is a "**significant burden** on the movant to show good cause for the transfer." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314 n.10 (5th Cir. 2008)[1]; *Texas Data Co., LLC v. Target Brands, Inc.*, 771 F. Supp. 2d 630, 638 (E.D. Tex. 2011) ("[T]he Court, in accordance with the Fifth Circuit, recognizes the significance of the burden and does not take it lightly"). To meet this burden, "the movant must show that transfer is '**clearly more convenient**' than the venue chosen by the plaintiff." *AGIS Software Dev. LLC v. HTC Corp.*, No. 2:17-CV-00514-JRG, 2018 WL 4680558, at *3 (E.D. Tex. Sept. 28, 2018) (citing *Volkswagen*, 545 F.3d at 315). "Absent such a showing, the plaintiff's choice of venue should be respected." *Id.*

In evaluating good cause for transfer, courts consider private and public interest factors, discussed below. *Id.* The factors are not exhaustive or exclusive, and "no single factor is dispositive." *Id.* "[T]he court may consider undisputed facts outside of the pleadings such as

---

[1] All emphases added unless otherwise noted.

affidavits or declarations, but it must draw all reasonable inferences and resolve factual conflicts in favor of the non-moving party." *Id.*

As set forth below, each of the relevant factors either weighs against transfer or is neutral at best. None favor transfer. Cisco's motion should thus be denied.

### A.  The Private Interest Factors Weigh Against Transfer

#### 1.  The sources of proof are just as accessible in this District as in the Northern District of California

"When considering the relative ease of access to sources of proof, a court looks to where documentary evidence, such as documents and physical evidence, are stored." *AGIS*, 2018 WL 4680558, at *5 (citing *Volkswagen*, 545 F.3d at 316). "For this factor to weigh in favor of transfer, [Cisco] must show that transfer to the Northern District of California will result in more convenient access to sources of proof." *Id.*

Cisco admits repeatedly that its documentary evidence can be accessed conveniently from any location. (Mot. at 9 ("any documentary evidence can be accessed from anywhere"); Mot. at 3 n.1 (documents "can be accessed from anywhere"). Cisco has not identified any physical documents or other sources of evidence that will be produced in this litigation; assuming that all of Cisco's documents will be produced electronically, this factor is neutral at most. *See J2 Glob. Commc'ns, Inc. v. Protus IP Sols., Inc.*, No. 6:8-CV-211, 2009 WL 440525, at *2 (E.D. Tex. Feb. 20, 2009) ("identifying the location of electronic sources of proof will typically not tip this factor in favor of transfer"); *See, e.g.*, *Lax v. Toyota Motor Corp.*, 65 F. Supp. 3d 772, 781 (N.D. Cal. 2014) ("[W]here electronic discovery is the norm (both for electronic information and digitized paper documents), ease of access is neutral given the portability of the information."); *iPowerUp, Inc. v. Ascent Solar Techs., Inc.*, No. LA CV16-01006 JAK (AFMx), 2016 WL 6953453, at *7 (C.D. Cal. May 27, 2016) ("[I]n light of the use of electronic discovery and document transmission,

3

this factor offers very limited support for the transfer of this action."); *Mirror Worlds Techs., LLC v. Facebook, Inc.*, No. 17-CV-3473 (JGK), 2017 WL 5634127, at *5 (S.D.N.Y. Nov. 20, 2017) ("It would not be a significant inconvenience to either party to transmit the relevant evidence electronically to this or any District.").

Furthermore, Cisco admits that at least some of its documents are stored on servers located in Richardson, Texas, within this District. (Mot. at 3.) Indeed, this Richardson facility is described by Cisco as a "Tier III" Data Center. Kroeger Decl., Ex. I at 2 . According to public reports, "Cisco spent $80 million to retool an used office building on its Richardson campus as a Tier III data center (with Teir IV power infrastructure) to support the consolidation of its global network." *Id.* Ex. J. This building comprises of 285,000 square feet, of which 30,000 square feet is dedicated to "data hall space." *Id.*

This Court has previously found that Cisco's maintenance of documents on its servers in Richardson weighs against transfer. *See* Declaration of Paul A. Kroeger, Ex. A (Order, *Oyster Optics, LLC v. Cisco Systems, Inc.*, Case No. 2:16-cv-1301-JRG, at 5-7 (Dec. 8, 2017) (Gilstrap, J.) (denying Cisco's motion to transfer from this District to the Northern District of California and finding that Cisco's storage of documents on its Richardson, Texas servers weighed against transfer)). Indeed, Cisco frequently attempts to transfer out of the jurisdiction of this Court, but courts of this District routinely recognize that the Northern District of California is not a clearly more convenient forum for disputes involving Cisco, particularly in light of Cisco's ties to this District. *See, e.g.*, Kroeger Decl., Ex. B (*Uniloc 2017 LLC v. Cisco Systems, Inc.*, Case No. 2:18-cv-00505-JRG (Sept. 16, 2019) (Gilstrap, J.) (denying Cisco's motion to transfer venue to the Southern District of New York)); C (*Net Navigation Systems, LLC v. Cisco Systems, Inc.*, Case No. 4:11-CV-660 (Aug. 24, 2012) (denying Cisco's motion to transfer venue to the Northern

4

District of California)); D (*Tivo Inc. v. Cisco Systems, Inc.*, Case No. 2:12-cv-311-JRG (Aug. 13, 2012) (Gilstrap, J.) (denying Cisco's motion to transfer venue to the Northern District of California)); E (*SSL Services, LLC v. Cisco Systems, Inc.*, Case No. 2:15-cv-00433-JRG-RSP (Feb. 24, 2016) (Payne, J.) (denying Cisco's motion to transfer venue to the District of Massachusetts)).

Cisco's attempt to double-count the location of its witnesses under this factor *and* the factor regarding the cost of attendance for willing witnesses (discussed below) is improper and should be rejected. *See AGIS*, 2018 WL 4680558, at *8 (E.D. Tex. Sept. 28, 2018) ("These factors do not permit a single source of proof or witness to be 'double counted' or unduly influence the analysis."). This factor concerns where the parties' documentary evidence can be most conveniently accessed, and as Cisco admits, its documentary evidence can be accessed "from anywhere." This factor thus weighs against transfer.

> **2. The Northern District of California is not clearly more convenient for the willing witnesses**

Cisco has failed to show that litigating in the Northern District of California would be "clearly more convenient" for the willing witnesses in this case. Cisco specifically identifies only two employee witnesses, and as party witnesses, their convenience is entitled to little weight. *CXT Sys., Inc. v. Container Store, Inc.*, No. 2:18-CV-00173-RWS-RSP, 2019 WL 1506015, at *3 (E.D. Tex. Apr. 5, 2019) (the convenience of party witnesses "is given diminished weight"); *Peloton Interactive, Inc. v. Flywheel Sports, Inc.*, No. 2:18-CV-00390-RWS-RSP, 2019 WL 2303034, at *3 (E.D. Tex. May 30, 2019) (same). Cisco also admits in passing that it has identified two other witnesses who with relevant information located in Scotland and Israel. But because Cisco prefers the Northern District of California, Cisco claims that these witnesses' knowledge would likely be cumulative of their Northern California employee's knowledge.

5

Furthermore, it appears that Cisco has improperly cherry-picked employees from only its Northern District of California offices in order to sway the transfer analysis. Indeed, there appear to be at least three employees in the Richardson, Texas office who potentially have knowledge of the network routing, inspection, and security features that are accused of infringement. Kroeger Decl., Ex. K (LinkedIn Profile of Ed Davison a "threat hunter analyst" working from Richardson; Ex. L (LinkedIn Profile of Kishan Ahuja, Team Lead at the Richardson office who a "certified internetwork expert"); Ex. M (LinkedIn Profile of Sai Arun Jumar Jujarampalli a "Software Architect" working from the Richardson office).

Moreover, Cisco appears to have a number of other United States branch offices, including in Austin and Houston. Kroeger Decl., Ex. F. Cisco, however, fails to provide any information about potential witnesses from any of these offices. It is highly unlikely that there is not a single relevant witness from any Cisco office outside the Northern District of California with relevant knowledge about the accused products. For example, Cisco admits that its engineering lead for one of the accused products, David Abe, is based in Cisco's office in Boxborough, Massachusetts—significantly closer to this Court than to the Northern District of California. Cisco's cherry-picking of witnesses from only its offices in the Northern District of California, and failure to provide any information about potential relevant witnesses from its other offices, is improper.

Cisco also makes much of the fact that Proven and its members are located in southern California, and that Northern California would therefore be more convenient for Proven. But where Proven is located is irrelevant to the issue of the whether there is a "***significant burden on the movant***" (Cisco) supporting its request for transfer. *In re Volkswagen of Am., Inc.*, 545 F.3d at 314 n.10. *See also Mohammed v. Mazda Motor Corp.*, 90 F. supp. 2d 757, 774 (E.D. Tex. 2002)

("it is the convenience of non-party witnesses, rather than that of party witnesses, that is the more important factor and is accorded greater weight in a transfer of venue analysis").

On balance, this factor is neutral at most.

### 3. The Northern District of California does not possess more relevant subpoena power

Cisco claims that "key third-party witnesses" are located in the Northern District of California, but other than prior art inventors—who are rarely called to testify at trial—Cisco identifies only one named inventor of one patent whom Cisco *believes* to live in Northern California. This factor therefore cannot outweigh Proven's choice of forum.

Almost all of the third-party witnesses that Cisco claims are not subject to this Court's subpoena power are in fact prior art authors or inventors. But Cisco's cherry-picking of alleged prior art inventors "believed to reside in" Northern California (Mot. at 5-6) should be rejected as a basis for transfer. This Court has repeatedly recognized that "inventors of prior art rarely, if ever, actually testify at trial." *Realtime Data, LLC v. Rackspace US, Inc.*, No. 6:16-CV-00961, 2017 WL 772653, at *8 (E.D. Tex. Feb. 28, 2017) ("*Rackspace*"); *see also PersonalWeb Techs., LLC v. NEC Corp. of Am., Inc.*, No. 6:11-CV-655, 2013 WL 9600333, at *8 n.13 (E.D. Tex. Mar. 21, 2013) (further recognizing that "[i]n most cases, the only witnesses who actually testify about prior art are the named inventors of the patents-in-suit and expert witnesses," and "[o]ccasionally, a party's corporate representative"). Accordingly, this Court has rejected arguments just like Cisco's argument here because, "[w]ithout even indicating on a good faith basis that a party intends to call a prior art witness to trial, it allows litigants to cherry-pick third parties who happen to have an invention in the relevant art and are located in the litigant's preferred district in order to sway the convenience analysis." *Rackspace*, 2017 WL 772653, at *8; *see also Diem LLC v. BigCommerce, Inc.*, No. 6:17-CV-00186-JRG, 2017 WL 6729907, at *3 (E.D. Tex. Dec. 28, 2017) (same).

7

Other than prior art authors, Cisco identifies only one person under this factor: one inventor of the '454 patent who "is believed to be located in Northern California." (Mot. at 10.) As Cisco admits, the other named inventors of the asserted patents are all located outside the Northern District of California, and would therefore not be subject to the subpoena power of that court. Cisco's "belief" that a sole inventor of one asserted patent resides in Northern California does not suffice to carry Cisco's burden to show that the Northern District of California is "clearly more convenient" than Proven's chosen forum.

Cisco also glosses over the fact that Synamedia, who Cisco says acquired the '454 accused products from Cisco, is also located outside the Northern District of California and therefore not subject to its subpoena power. Cisco admits that Synamedia is based in London and has offices in Costa Mesa, California—but cannot claim that Synamedia has any employees or offices located within the Northern District of California.

Moreover, Cisco ignores that the face of the asserted '757 Patent identifies all three of its witnesses are located within Texas and within this Court's subpoena power. For example, inventors An Ge and Girish Chriuvolu are identified as residing in Plano. And, inventor Maher Ali *is identified as residing in **Richardson, Texas**.* Dkt. No. 1-5 at 1.

Cisco further attempts to hand waive over the fact that all four of the patents were originally assigned to Alcatel Lucent entities.[2] Dkt. Nos. 1-1 at 1, 1-3 at 1, 1-5 at 1, 1-7 at 1. Alcatel-Lucent has a regional office in Plano, Texas, within this District, and would therefore be subject to this Court's subpoena power. Kroeger Decl., Ex. G. As a prior owner of the patents-in-suit, Alcatel-Lucent may well have relevant documents and witnesses concerning all four of the patents in

---

[2] Cisco also "corrected" its motion to omit reference to Alcatel-Lucent, a prior owner of each of the asserted patents. (Dkt. No. 29.)

8

suit.

Regardless, even assuming, *arguendo*, that the third parties are necessary for trial, nearly all the potential witnesses can be subpoenaed for depositions under Rule 45, regardless of whether this case is transferred. *Plastronics Socket Partners, Ltd. v. Dong Weon Hwang*, No. 2:18-CV-00014-JRG-RSP, 2018 WL 6589873, at *3 (E.D. Tex. Dec. 14, 2018). Cisco does not assert that using the third-party witnesses' deposition testimony would be an inconvenience. *Nexus Display Techs. LLC v. Dell, Inc.*, No. 2:14-CV-762, 2015 WL 5043069, at *4 (E.D. Tex. Aug. 25, 2015) (citing *Battle ex rel. Battle v. Mem'l Hosp. at Gulfport*, 228 F.3d 544, 554 (5th Cir. 2000)); *VirtualAgility, Inc. v. Salesforce.com, Inc.*, No. 2:13-CV-00011-JRG, 2014 WL 459719, at *5 (E.D. Tex. Jan. 31, 2014) ("While this Court recognizes some generic benefit of providing live witnesses at trial, the Court is not convinced that using the non-party witnesses' deposition as opposed to live testimony at trial would seriously inconvenience Defendants.").

This factor weighs against transfer, or is at best neutral.

### 4. The "practical problems" and judicial economy weigh against transfer

"Practical problems include those that are rationally based on judicial economy." *PersonalWeb Techs.*, 2013 WL 9600333, at *5. "Particularly, the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer." *Id.* "Indeed, the Federal Circuit has recognized that the consideration of the interest of justice, which includes judicial economy, may be determinative to a particular transfer motion, even if the convenience of the parties and witnesses might call for a different result." *CXT*, 2019 WL 1506015, at *4 (quoting *Regents of the Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1565 (Fed. Cir. 1997) (internal quotation marks omitted)); *see also In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009) ("[T]he existence of multiple lawsuits involving the same issues is a paramount consideration when determining whether a

9

transfer is in the interest of justice.").

Here, as Cisco admits, there are other cases involving the patents-in-suit pending in the Western District of Texas. Even if this action were transferred to the Northern District of California, parallel actions involving the patents-in-suit would still move forward in the Western District of Texas. Therefore, transferring this action would not result in any improvements in judicial economy and this factor is neutral in the transfer analysis.

### B. The Public Interest Factors Weigh Against Transfer

#### 1. Administrative difficulties resulting from court congestion weighs against transfer

"To the extent that court congestion is relevant, the speed with which a case can come to trial and be resolved may be a factor." *AGIS*, 2018 WL 4680558, at *9. And here, the available statistics show that the time to trial in this District is nearly 6 months faster than in the Northern District of California. *See, e.g.*, Kroeger Decl., Ex. H (showing the median time to trial is 17.7 months for the Eastern District of Texas and 22 months for the Northern District of California).

Cisco ignores the fact that time to trial is significantly shorter in this District than in the Northern District of California. "Though the statistics vary slightly by source, this Court has consistently found that median time to trial in this District is several months faster than the Northern District of California." *AGIS*, 2018 WL 4680558, at *9. Moreover, Cisco fails to account for the fact that this case has been pending in this District for nearly five months. Transferring this case to the Northern District of California would essentially restart the trial clock, thus resulting in even further delay. This factor strongly weighs against transfer.

#### 2. The Northern District of California does not have a greater interest

Cisco cannot dispute this District's interest in this case given that Cisco has an office in this District and sells accused products in this District. Cisco's assertion that the Northern District

of California has a greater interest because it is headquartered in the Northern District of California is meritless. This Court has previously rejected this same argument because, "[p]ut less delicately, this argument amounts to 'California has a localized interest in resolving this dispute because its jurors will be biased toward the defendant.'" *Ingeniador, LLC v. Adobe Sys. Inc.*, No. 2:12-CV-00805-JRG, 2014 WL 105106, at *4 (E.D. Tex. Jan. 10, 2014). This Court has further noted that such an argument "raises troubling fairness implications" and should be "afford[ed] little weight." *Phoenix Licensing, L.L.C. v. Royal Caribbean Cruises Ltd.*, No. 2:13-CV-1095-JRG-RSP, 2014 WL 7272640, at *5 (E.D. Tex. Dec. 22, 2014).

Regardless, the accused conduct is not limited to merely design and development of the accused products. It also includes sales, and again, there is no dispute that Cisco sells products, including the accused products, throughout Texas and within this District. Accordingly, this factor is neutral at best. *See Peloton*, 2019 WL 2303034, at *5 ("This Court has found the localized interest factor to be neutral in past cases where this venue and the proposed venue both possessed a localized interest in the case.").[3]

The other public interest factors are neutral

Cisco admits that the remaining factors are neutral and do not favor transfer. (Mot. at 14.)

### III. CONCLUSION

For all the foregoing reasons, Proven respectfully asks that the Court deny Cisco's motion to change venue.

---

[3] Other courts have held that as a general matter, this factor is neutral because "[p]atent cases implicate constitutionally protected property rights" and "[t]he resolution of patent cases is governed by federal law reviewed by a court of appeals of national (as opposed to regional) stature." *Cradle IP, LLC v. Texas Instruments, Inc.*, 923 F. Supp. 2d 696, 701 (D. Del. 2013). "Moreover, to characterize patent litigation as 'local' undermines the appearance of neutrality that federal courts were established to provide and flies in the face of the national (if not global) markets that are affected by the outcome of these cases." *Id.*

11

| | |
|---|---|
| Dated: July 24, 2020 | Respectfully submitted, |
| | */s/ Reza Mirzaie* |
| | Reza Mirzaie (CA SBN 246953) |
| | Email: rmirzaie@raklaw.com |
| | Marc A. Fenster (CA SBN 181067) |
| | Email: mfenster@raklaw.com |
| | Brian D. Ledahl (CA SBN 186579) |
| | Email: bledahl@raklaw.com |
| | Benjamin T. Wang (CA SBN 228712) |
| | Email: bwang@raklaw.com |
| | Kent N. Shum (CA SBN 259189) |
| | Email: kshum@raklaw.com |
| | Paul A. Kroeger (SBN 229074) |
| | Email: pkroeger@raklaw.com |
| | Jonathan Ma (CA SBN 312773) |
| | Email: jma@raklaw.com |
| | RUSS AUGUST & KABAT |
| | 12424 Wilshire Blvd. 12th Floor |
| | Los Angeles, CA 90025 |
| | Phone: (310) 826-7474 |
| | |
| | ***Attorneys for Plaintiff Proven Networks, LLC*** |

## CERTIFICATE OF SERVICE

I hereby certify that on July 24, 2020, I caused a true and correct copy of the foregoing to be served by electronic means, via the Court's CM/ECF system, on all counsel registered to receive electronic notices and caused copies of the aforementioned document to be served via Federal Express, overnight courier, postage prepaid upon any non-CM/ECF participants.

*/s/ Reza Mirzaie*
*Reza Mirzaie*